Mikki M. BERGMAN, Appellant–Respondent,

v.

Thomas M. ZEMPEL, Appellee–Petitioner.

No. 02A03–0305–JV–187.

Court of Appeals of Indiana.

April 28, 2004.

Matthew A. Doss, Earl Raskosky Law Office, Fort Wayne, IN, Attorney for Appellant.

## OPINION

MAY, Judge.

Mikki M. Bergman ("Mother") brings this interlocutory appeal from the Allen Superior Court's denial of her motion to dismiss a petition to establish paternity filed by Thomas M. Zempel ("Father"). Mother raises two issues, which we consolidate and restate as whether the trial court erred when it failed to dismiss Father's petition. We reverse.[1]

## FACTS AND PROCEDURAL HISTORY

Mother and Father dated but never married. During the course of their relationship, two children were born. C.L.Z. is a girl born September 7, 1999, and T.D.Z. is a boy born February 6, 2001. While the children have Father's surname, paternity was never established.

In the fall of 2001, Father was ordered to serve time in prison for reasons not relevant to our analysis. He was to be released from prison in April of 2002. On February 5, 2002, Mother took the children and moved to Lehigh County, Penn-

---

1. We hereby deny Mother's request for an oral argument.

sylvania, where they stayed with Mother's parents.

On February 25, 2002, Mother filed a petition for protection from abuse in the Lehigh County Court of Common Pleas ("the Pennsylvania Court").[2] That same day, the Pennsylvania Court granted a temporary order giving Mother sole custody of the children and prohibiting Father from contacting Mother or the children. A hearing on Mother's petition was set for April 30, 2002, and Father was given appropriate notice of the hearing. On March 12, 2002, Father sent a letter to the Pennsylvania Court requesting the hearing be rescheduled for a date after his release from parole, and the Pennsylvania Court reset the hearing for November 5, 2002.

On July 16, 2002, Father filed a petition to establish paternity in Allen Superior Court ("the trial court").[3] On October 25, 2002, Mother filed in the Pennsylvania Court a petition for full custody of the children in which she alleged it was in the best interest of the children was to be with her due to Father's alcoholism. The Pennsylvania Court set a conference on Mother's petition for December 19, 2002, and sent an order to Father requiring him to appear for that conference.

Father did not appear for the November 5th hearing in Pennsylvania. At that hearing, the Pennsylvania Court entered a final order for protection from abuse that found Mother's allegations of abuse were sustained, granted Mother's request for a final protection order, and prohibited Father from "harassing, stalking, or threatening" Mother and the children. (App. at 17.) In addition, the Pennsylvania Court ordered Father to pay $117.50 in court costs and gave "sole legal and primary physical custody" of the children to Mother. (*Id.* at 13.)

On November 13, 2002, Mother filed in the trial court a motion to dismiss Father's petition.[4] The trial court held a hearing on Mother's motion. On December 5, 2002, the trial court denied Mother's motion in an order that contained the following findings and conclusions:

1. The Petitions were filed in the Allen Superior Court on July 16, 2002. [Father] is now and has been at all relevant times a resident of the State of Indiana.

2. [Mother] resided in the State of Indiana with both children over six (6) months until the 5th day of February, 2002, when she took the children and moved to the State of Pennsylvania (PA). At that time Petitioner was incarcerated in an Indiana prison. She continued to reside with the children in PA as of the date of the hearing on her Motion.

3. On February 25, 2002, [Mother] filed her Petition for a PROTECTION FROM ABUSE order under PA law. The PA Court issued a temporary order which included a temporary custody grant to [Mother]. The Protection order applied to [Mother] and both children. [Father] was served with the order and a notice of hearing. [Father] requested a continuance until he was released from prison. The continuance was granted and the Petition was reset for hearing on November 5, 2002.

4. The Petitions herein were filed less than six (6) months after [Mother] moved from Indiana.

---

**2.** Mother did not provide a copy of this petition in her appendix.

**3.** Mother did not provide a copy of this petition in her appendix.

**4.** Again, Mother did not provide a copy of this motion in her appendix.

5. In October, 2002, [Mother] filed her verified PETITION FOR CUSTODY in PA. One of the allegations contained in the Petition was that [Father] was the father of both children.

6. On November 5, 2002, the PA Court made the temporary PROTECTION FROM ABUSE order permanent and made it applicable to [Mother] and both children. [Father] did not appear at that hearing.

7. The Petitions filed herein seek to establish the paternity of both children and raise the issues of custody, parenting time, and support.

Based on the foregoing FINDINGS OF FACT, the Court now enters CONCLUSIONS OF LAW as follows:

A. When the two PETITIONS TO ESTABLISH PATERNITY were filed on July 16, 2002, this Court had jurisdiction of the children because they had been residents of the State of Indiana for more than six (6) months before they moved on February 5, 2002. A period of six (6) months had not passed from the date of their move until the Petitions were filed. Indiana was then and still is the "home state" of the children as that term is defined in Indiana Code 31–17–3–2(5).

B. The Petitions filed in this Court seek to establish paternity of the children and address the issues of custody, parenting time and support.

C. This Court concludes that it still has jurisdiction of all issues pertaining to the two (2) children under the provisions of the Uniform Child Custody Jurisdiction Law (UCCJL), Indiana Code 31–17–3–1, et. seq. This Court recognizes that Indiana Code 31–17–3–7 concerns the issue of "Inconvenient Forum." Another hearing is needed to receive evidence on the provisions of that statute in order to determine if it is applicable.

D. Based on the current status of the record, this Court concludes that the MOTION TO DISMISS should be denied.

(Appellant's Br. at 21–2.). That order was certified for interlocutory appeal after a hearing on April 16, 2003. We accepted jurisdiction under Ind. Appellate Rule 14(B) on June 27, 2003.

## DISCUSSION AND DECISION

As an initial matter, we note Father failed to file an appellee's brief. When an appellee fails to file a brief, we may reverse the trial court's decision if the appellant demonstrates a prima facie case of reversible error. *Wright v. Wright*, 782 N.E.2d 363, 366 (Ind.Ct.App.2002). Prima facie means "at first sight, on first appearance, or on the face of it." *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind.Ct.App. 2002). This rule relieves us of the burden of controverting appellant's arguments for reversal, which is a burden that properly rests with the appellee. *Wright*, 782 N.E.2d at 366.

Mother argues the trial court erred by denying her motion to dismiss for lack of jurisdiction under Ind. Trial Rule 12(B)(2). At issue in this case is whether the trial court could properly exercise jurisdiction under Indiana's version of the Uniform Child Custody Jurisdiction Act ("UCCJA"). We apply an abuse of discretion standard to a trial court's decision to exercise jurisdiction under the UCCJA. *Pryor v. Pryor*, 709 N.E.2d 374, 376 (Ind. Ct.App.1999). An abuse of discretion has occurred if the trial court's decision was clearly against the logic and effect of the facts and circumstances before the court or if the court misinterpreted the law. *Id.*

The trial court concluded Indiana was and still is the "home state" of the chil-

dren. Indiana's UCCJA defines a "home state" as:

> the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) month or other period.

Ind.Code § 31–17–3–2(5). Mother appears to concede Indiana is her children's home state. (*See* Appellant's Br. at 13. ("[Father] may have, himself, satisfied Indiana's requirements for jurisdictional determination of custody as "Home State" within our Indiana's version of the UCCJA....")).

■ Nevertheless, Mother claims the trial court's conclusion that it could exercise jurisdiction under the UCCJA was erroneous because "the determination does not adequately address the emergency jurisdiction of Pennsylvania under the Federal [Parental Kidnapping Prevention Act] and our situation where Pennsylvania had already made the initial custody determination." (*Id.*)

An "initial decree" is "the first custody decree concerning a particular child." Ind.Code § 31–17–3–2(6). Ind.Code § 31–17–3–13 requires:

> The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance

with this chapter or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this chapter.

Before Father filed his paternity petition in the trial court on July 16, 2002, the Pennsylvania Court on February 25, 2002, entered an emergency order that gave Mother temporary custody of the children until it could hold a hearing on the merits of her protection from abuse petition. Accordingly, at the time of Father's petition, an initial custody decree had been entered in a court of another state. If the Pennsylvania court "assumed jurisdiction under statutory provisions substantially in accordance with this chapter," then the trial court was required to enforce the Pennsylvania order and dismiss Father's petition. *See* Ind.Code § 31–17–3–13.

Moreover, at the time Father filed his petition, a custody proceeding was pending in the Pennsylvania Court pursuant to the protection from abuse petition filed by Mother. Indiana trial courts are prohibited from exercising jurisdiction over child custody questions when "at the time of filing of the petition[,] a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state...." Ind.Code § 31–17–3–6(a).[5] Again, if the Pennsylvania Court was exercising jurisdiction in conformity with Indiana's ver-

---

5. We also note that other subsections of Ind. Code § 31–17–3–6 require a trial court, if it has reason to believe another state is exercising jurisdiction over a child custody proceeding involving the same child, to contact the court in the other state *before holding a hearing* to exchange information so that "the issue may be litigated in the more appropriate forum." Ind.Code § 31–17–3–6(c) (emphasis added). The record before us does not indicate whether the trial court contacted the Pennsylvania Court, and the trial court erred if it failed to do so.

sion of the UCCJA, then the trial court should have dismissed Father's petition. *See Gamas–Castellanos v. Gamas,* 803 N.E.2d 665, 666 (Ind.2004) (when Louisiana exercised jurisdiction in substantial conformity with the UCCJA, the Indiana court should not have exercised the jurisdiction it had); *Stephens v. Stephens,* 646 N.E.2d 682, 686 (Ind.Ct.App.1995) (when Indiana and Kentucky could both properly exercise jurisdiction and Kentucky assumed jurisdiction over child's custody pursuant to an "emergency protective order" before custody petition was filed in Indiana, the Indiana court was obligated under the UCCJA to decline to exercise any jurisdiction it may have had).

In summary, under both Ind.Code § 31–17–3–13 and § 31–17–3–6, to determine whether the trial court erred by refusing to dismiss Father's petition, we must determine whether the Pennsylvania Court exercised jurisdiction in substantial conformity with Indiana's version of the UCCJA. The appealed order includes no findings regarding whether the Pennsylvania Court exercised jurisdiction in accordance with its version of the UCCJA. In addition, neither the temporary order nor the permanent order entered by the Pennsylvania Court indicates whether it was exercising jurisdiction in accordance with its version of the UCCJA. The limited record provided by Mother provides no assistance in this regard. Accordingly, we examine the Pennsylvania Code.

The Pennsylvania Court acted pursuant to an emergency petition for protection from abuse. The statutes creating that cause of action are found at 23 Pa.C.S.A. § 6101 (West 2001), which contains the "Protection from Abuse Act." Under that Act, a trial "court may grant any protec-

tion order ... to bring about a cessation of abuse of the plaintiff or minor children. The order ... may include: ... (4) Awarding temporary custody of or establishing temporary visitation rights with regard to minor children." 23 Pa.C.S.A. § 6108(a) (West 2001). Our review of the remainder of the Protection from Abuse Act uncovered only one reference to Pennsylvania's version of the UCCJA,[6] and that reference does not instruct the trial court to exercise jurisdiction only in accordance with the UCCJA. However, a later section of that Act provides: "Unless otherwise indicated in this chapter, a proceeding under this chapter shall be in accordance with applicable general rules...." 23 Pa. C.S.A § 6117 (West 2001).

Applicable general rules regarding custody proceedings in Pennsylvania can be found in Pennsylvania's Rules of Civil Procedure at Rule 1915.1 *et seq.* As Rule 1915.1 explains: "These rules govern the practice and procedure in all actions for custody, partial custody and visitation of minor children[.]" Rule 1915.2, regarding venue, notes:

> Under the Uniform Child Custody Jurisdiction Act, *23 Pa.C.S. § 5341* et seq., the court may decline to exercise its jurisdiction in a particular action despite the action having been brought in a county of proper venue. Section 5347 of the Domestic Relations Code, relating to simultaneous proceedings in other courts, provides for the mandatory refusal by the court to exercise its jurisdiction in an action. Section 5348 of the Code, relating to inconvenient forum, and Sections 5349 and 5364(f) of the Code, relating to jurisdiction declined by reason of conduct, provide for the discretionary refusal by the court to exer-

---

**6.** 23 Pa.C.S.A. § 6108(a)(4) (West 2001) provides: "Nothing in this paragraph shall bar either party from filing a petition for custody under Chapter 53 (relating to custody) or under the Pennsylvania Rules of Civil Procedure."

cise its jurisdiction. See *23 Pa.C.S. §§ 5347, 5348, 5349* and *5364(f)*.

In addition, Rule 1915.5 discusses jurisdiction:

(a) A party must raise any question of jurisdiction of the person or venue by preliminary objection filed within twenty days of service of the pleading to which objection is made or at the time of hearing, whichever first occurs. No other pleading shall be required, but if one is filed it shall not delay the hearing.

*Note:* The court may raise at any time a question of (1) jurisdiction over the subject matter of the action or (2) the exercise of jurisdiction pursuant to Section 5347 of the Domestic Relations Code, relating to simultaneous proceedings in other courts, Section 5348, relating to inconvenient forum, and Sections 5349 and 5364(f), relating to jurisdiction declined by reason of conduct. See *23 Pa.C.S. §§ 5347, 5348, 5349* and *5364(f)*.

The Uniform Child Custody Jurisdiction Act, *23 Pa.C.S. § 5366*, provides that, upon request of a party, an action in which a question of the existence or exercise of jurisdiction is raised shall be given calendar priority and handled expeditiously.

Accordingly, under Pennsylvania's Rules of Civil Procedure, a custody proceeding filed pursuant to the Protection from Abuse Act had to occur in accordance with Pennsylvania's version of the UCCJA and the Pennsylvania trial court had an affirmative duty to question its exercise of jurisdiction under the UCCJA.

Under Pennsylvania's version of the UCCJA, a court may make a child custody determination only if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody

is awarded and have found it to be satisfactory for the welfare of the child.

23 Pa.C.S.A. § 5344(a) (West 2001).

The requirements for jurisdiction under Indiana's version of the UCCJA are set out at Ind.Code § 31–17–3–3:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as a parent continues to live in this state;

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and the child has been abandoned; or

(4)(A) it appears that no other state would have jurisdiction under prereq-uisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a) physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

As is readily apparent, our version of the UCCJA does not contain subsection (a)(3)(ii) of Pennsylvania's version, which permits Pennsylvania courts to exercise jurisdiction over child custody proceedings if the child is in Pennsylvania and "it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent[.]" [7] 23 Pa.C.S.A. § 5344 (West 2001).

However, we need not determine whether that distinction renders the Pennsylvania Court's exercise of jurisdiction not in substantial conformity with Indiana's version of the UCCJA because federal law requires us to give full faith and credit to

---

**7.** In the interest of completeness, we note a prior version of our UCCJA statute contained this emergency provision. *See* Ind.Code Ann. § 31–1–11.6–3 (West 1994). However, the legislature deleted that provision in P.L. 79–1994, Sect. 4. *See* Ind.Code Ann. § 31–1–11.6–3 (West Supp.1995). If our legislature had not eliminated that emergency jurisdiction provision, the outcome here would have been controlled by *Stephens,* wherein we held that an Indiana court that could exercise home state jurisdiction over a child was nevertheless required to decline to exercise its jurisdiction because a Kentucky trial court had already acquired jurisdiction over a child's custody pursuant to an emergency protective order issued following a petition alleging domestic violence. *Stephens,* 646 N.E.2d at 686–87.

the Pennsylvania Court's custody determination. As Mother notes, Indiana courts are required to acknowledge Pennsylvania's exercise of jurisdiction under the federal Parental Kidnapping Prevention Act ("PKPA").[8] That Act requires each State to enforce, and not modify, custody orders entered by courts in other States if the court's decision was "made consistently with the provisions of this Section." 28 U.S.C. § 1738A(a). A determination is consistent with that Section if:

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because the child, a sibling, or parent of the child has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody or visitation of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

The Pennsylvania Court's exercise of jurisdiction was in accordance with subsection (a)(2)(D) of the PKPA, as the children were in Pennsylvania and an emergency petition was filed alleging abuse by Father. In addition, Pennsylvania's version of the UCCJA gave the Pennsylvania Court jurisdiction, as required by subsection (a)(1). Accordingly, the PKPA requires Indiana courts to give full faith and credit to the custody determination of the Pennsylvania Court.

■ Finally, we note that even if the Pennsylvania Court erred by exercising jurisdiction over the child custody issue

---

8. Congress passed the PKPA in 1980 to "make the enforcement of a sister state's custody decision a federal obligation" and "to reduce state-by-state deviations in the interpretation and application of the UCCJA." David Carl Minneman, Annotation, *Pending Proceeding in Another State as Ground for Declining Jurisdiction under § 6(a) of the Uni-* *form Child Custody Jurisdiction Act (UCCJA) or the Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A(g)*, 20 ALR5th 700 (1994), § 2(a). "[T]he PKPA imposes on states a federal duty, under enumerated standards derived from the UCCJA, to give full faith and credit to the custody decrees of other states[.]" *Id.*

pursuant to the petition for protection from abuse filed by Mother, the trial court should have declined to exercise jurisdiction over Father's later filed petition. In another case involving an interstate custody dispute, our supreme court recently noted:

> [E]ven if Louisiana erred in determining which state was the home state for purposes of deciding custody of the younger child, because the issue was conclusively litigated in Louisiana with both sides fully participating, the decision of the Louisiana court system is entitled to full faith and credit in Indiana.

*Gamas–Castellanos*, 803 N.E.2d at 666.

Here, Father did not "conclusively litigate" Pennsylvania's jurisdiction in the Pennsylvania proceeding. However, Father was given notice of the Pennsylvania proceeding, appeared by mail to request the hearing be postponed to such time as he could travel out of Indiana to attend the hearing, and then failed to appear for the hearing at which the Pennsylvania court entered the permanent protection from abuse order granting custody to Mother.

We have repeatedly noted jurisdiction under the UCCJA is a question of jurisdiction over the case and, if a party fails to contest a trial court's jurisdiction, the issue can be waived. *See, e.g., In re Custody of A.N.W.*, 798 N.E.2d 556, 560–61 (Ind.Ct. App.2003), *trans. denied.* Similarly, Pennsylvania's Rules of Civil Procedure require a party to "raise any question of jurisdiction of the person or venue by preliminary objection filed within twenty days of service of the pleading to which objection is made or at the time of hearing, whichever first occurs." Pa. R.C.P. 1915.5. As Father failed to question the Pennsylvania Court's jurisdiction at an appropriate time, he has waived any such argument. Accordingly, even if the Pennsylvania Court erred when it exercised jurisdiction over Moth-

er's petition, Indiana courts should recognize and enforce its custody determination. *See Gamas–Castellanos*, 803 N.E.2d at 666.

The Allen Superior Court should have stayed proceedings on Father's petition and contacted the Pennsylvania Court when it learned custody proceedings were pending in Pennsylvania. *See* Ind.Code § 31–17–3–6. Because the Pennsylvania Court had entered an initial custody decree in conformity with the PKPA, the trial court should have recognized and enforced that initial order. Moreover, because Pennsylvania had continuing jurisdiction over the custody determination in accordance with the PKPA and Pennsylvania's version of the UCCJA, the trial court should have dismissed Father's petition. Accordingly, we reverse the trial court's denial of Mother's motion to dismiss.

Reversed.

BAKER, J., and NAJAM, J., concur.