Mary (Harding) **PERKINS,**
**Appellant–Respondent,**

v.

Steve **HARDING, Appellee–Petitioner.**

No. 40A01–0410–CV–433.

Court of Appeals of Indiana.

Oct. 28, 2005.

Brian J. Belding, Rogers & Dove, North Vernon, for Appellant.

## OPINION

MAY, Judge.

Mary Perkins appeals the denial of her motion to correct error following the dissolution of her marriage to Steve Harding. Perkins raises one issue on appeal, which we expand and restate as:

1. Whether the trial court abused its discretion when it decided which property to include in the marital pot; and

2. Whether the court's division of assets was an abuse of discretion. We affirm and remand with an instruction.[1]

## FACTS AND PROCEDURAL HISTORY

Perkins and Harding married on March 10, 2001. Harding filed a petition for dissolution of marriage on August 1, 2003. The court divided the parties' debts and assets on April 6, 2004, in an order that provided:

> Comes now the Court, and after hearing held on April 2, 2004, in which [Harding] and [Perkins] appeared with counsel, now finds that this Court has venue

proper over the parties hearing [sic] named and the subject matter and venue proper in Jennings County, and orders [Harding's] attorney to do an order on the divorce decree and [Perkins'] former name restored.

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that [Harding] & [Perkins] shall get the following debts and assets as follows:

| Mr. Harding's Assets | |
| --- | --- |
| 1/2 Home Federal Money Market | $5,803.00 |
| 1/2 Savings Account | $1,717.20 |
| First Community Account | $ 507.36 |
| Personal Property | $6,688.84 |
| 2000 Harley Motorcycle | $ (?) |
| | $ (?) |

| Mr. Harding's Debts | |
| --- | --- |
| Dental Bill | $ 729.00 |
| Dodge Ram Debt | $3,000.00 |
| 1/2 Napa Debt | $ 591.46 |
| Motorcycle Debt | $ (?) |
| | $ (?) |

| Ms. [Perkins'] Assets | |
| --- | --- |
| 1/2 Home Federal Money Market | $5,803.00 |
| Home Federal Checking | $ 529.66 |
| 1/2 Savings Account | $1,717.21 |
| 1991 Chevrolet Bus | $ (?) |
| 1999 Freightliner Bus | $ (?) |
| Equity in Home | $ (?) |
| | $ (?) |

| Ms. [Perkins'] Debts | |
| --- | --- |
| 1/2 Napa Debt | $ 591.45 |
| Bus Debt | $ (?) |
| | $ (?) |

(Appellant's App. at 3–4.) A week later, the court entered an order dissolving the marriage.

Each party filed a motion to correct error. Perkins' motion alleged:

1. That the Court's division of the bank accounts is contrary to the evidence that was presented.

2. That pursuant to respondent's bank account worksheet, only $3,443.41 was accumulated for all bank accounts

---

1. Perkins' counsel failed to include a copy of the court's order in the Appellant's Brief as is required by Ind. Appellate Rule 46(A)(10).

We admonish counsel to follow that directive in the future.

during the parties' marriage. Therefore, the petitioner should only be entitled to one-half (1/2) of said amount from the sum of $1,717.21.

3. That the evidence presented was that a majority of the funds in respondent's Home Federal Money Market account was attributable to a sale of a 1992 Dodge she owned prior to marriage.

4. That the bank account balances per the Order do not correspond with the proper bank accounts.

5. That the evidence showed that [Perkins] had to replace most of the parties [sic] personal property. However, [Perkins] did not receive any credit for replacing said property.

(*Id.* at 6.) After a hearing, the court denied both motions.

## DISCUSSION AND DECISION

Perkins appeals the denial of her motion to correct error.[2] A trial court has broad discretion to grant or deny a motion to correct error. *Dughaish ex rel. Dughaish v. Cobb*, 729 N.E.2d 159, 167 (Ind.Ct. App.2000), *reh'g denied, trans. denied* 753 N.E.2d 2 (Ind.2001). We will reverse its decision only for an abuse of that discretion. *Id.* An abuse of discretion occurs if the trial court's decision was against the logic and effect of the facts and circumstances, or reasonable inferences therefrom, that were before the court, or if the trial court's decision "is without reason or is based upon impermissible reasons or considerations." *Id.*

Perkins' motion to correct error challenged the trial court's valuation and division of assets between Perkins and Harding. A trial court has broad discretion to value assets in a dissolution action. *Thompson v. Thompson*, 811 N.E.2d 888, 916 (Ind.Ct.App.2004), *reh'g denied, trans. denied* 831 N.E.2d 740 (Ind.2005). The court has not abused its discretion if its valuation is supported by evidence, or the reasonable inferences therefrom, in the record. *Id.*

Marital assets include property:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

 (A) after the marriage; and

 (B) before final separation of the parties; or

(3) acquired by their joint efforts.

Ind.Code § 31–15–7–4(a). The court's goal is to divide the marital property in a just and equitable manner, Ind.Code § 31–15–7–4(b), and we presume just and equitable division is synonymous with equal division between the parties. Ind.Code § 31–15–7–5.

However, if one party feels equal division is not just and equitable, that party may rebut the presumption of equal division by presenting evidence regarding the following factors:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

---

**2.** We note Harding failed to file an appellee's brief. In such a situation, we will not undertake the burden of controverting the appellant's arguments, as that job properly rests with the appellee. *Bergman v. Zempel*, 807 N.E.2d 146, 149 (Ind.Ct.App.2004). However, neither are we relieved of our "obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required." *Vukovich v. Coleman*, 789 N.E.2d 520, 525 n. 4 (Ind.Ct.App.2003). If the appellant demonstrates *prima facie* error, we may reverse the trial court's decision. *Bergman*, 807 N.E.2d at 149. *Prima facie* means "at first sight, on first appearance, or on the face of it." *Id.*

(2) The extent to which the property was acquired by each spouse:

 (A) before the marriage; or

 (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

 (A) a final division of property; and

 (B) a final determination of the property rights of the parties.

*Id.*

 Division of the assets between divorcing parties is left to the trial court's discretion. *Akers v. Akers,* 729 N.E.2d 1029, 1031–32 (Ind.Ct.App.2000). Even if the facts and reasonable inferences might allow us to reach a conclusion different than did the trial court, we will not substitute our judgment for that of the trial court unless its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* We consider only the evidence favorable to the judgment. *Goodman v. Goodman,* 754 N.E.2d 595, 599 (Ind.Ct.App.2001), *reh'g denied.* We may not reweigh the evidence or reassess the credibility of the witnesses. *Akers,* 729 N.E.2d at 1032.

 A party challenging a property division must "overcome a strong presumption that the court considered and complied with the applicable statute." *Id.* (quoting *In re Marriage of Bartley,* 712 N.E.2d 537, 542 (Ind.Ct.App.1999)). We

consider the court's disposition of marital property "as a whole, not item by item." *Krasowski v. Krasowski,* 691 N.E.2d 469, 473 (Ind.Ct.App.1998). When we review the division, our focus is on what the court did, not what the court could have done. *Akers,* 729 N.E.2d at 1032.

### 1. *Inclusion of Property*

Perkins notes Harding testified he was not "interested in possession of marital residence and buses or any equity that may have accrued in them during their marriage." (Appellant's Br. at 5.) Because he so testified, Perkins asserts, the trial court erred by including those items in the marital pot. Perkins is correct that Harding testified he was not interested in taking any of the money from the house and the buses. Nevertheless, she is wrong about what his testimony means for the court's inclusion of items in the marital estate.

 Indiana subscribes to the "one-pot" theory of marital possessions. *See Fobar v. Vonderahe,* 771 N.E.2d 57, 58 (Ind.2002) ("Property owned by either spouse before the marriage is included in the marital estate and subject to division and distribution."); *Thompson,* 811 N.E.2d at 912 (" 'one-pot' theory specifically prohibits the exclusion of any asset"). Because the marital estate includes all the property, "whether owned by either spouse prior to marriage, acquired by either spouse in his or her right after the marriage and prior to final separation of the parties, or acquired by their joint efforts," *Neffle v. Neffle,* 483 N.E.2d 767, 769 (Ind.Ct.App.1985) (citing Ind.Code § 31–1–11.5–11, now Ind.Code § 31–15–7–4(a)), *reh'g denied, trans. denied,* the court's order dividing the marital estate should list all marital property. The court did not err when it listed the equity in the house and the buses as assets assigned to Perkins.

The court awarded $1,717.21 to each party from a "Savings Account." (App. at 3,4.) Perkins asserts: ."There was no evidence presented on such an account. .It appears that the figure ... was used as the parties [sic] share [sic] of all bank accounts." (Appellant's Br. at 6.) Perkins is correct. We find no evidence of such an account in the record; her Exhibit 2 contains a suggestion the court should award each party "$1,717.21" to equally divide the marital increases in the checking and money market accounts. (App. at 90.) Because the court equally divided the checking and money market accounts, its inclusion of Perkins' suggested division as another account was erroneous. Nevertheless, as the court awarded the same amount to each party, the error was harmless. We instruct the court to delete that item from each party's list of assets in its order.

Perkins asserts she should have been given credit for her purchase of replacement personal property Harding took when he left. The parties testified Harding's father gave them most of the household goods they possessed at separation. Harding took those items with him, and Perkins purchased replacements. Perkins claims the cost of replacing the items was $6,688.84 and the court should have included that amount in the marital pot. Contrary to Perkins' assertion, she was given credit for that amount because the court included "Personal Property" valued at "$6,688.84" in the assets assigned to Harding. (App. at 3.)

Perkins asserts the court erred when it included the NAPA bill in the debts to be divided "despite evidence that said bill had been paid." (Appellant's Br. at 7.) As with other items, the parties provided conflicting testimony regarding ·the NAPA bill. Harding, testified Perkins should·be responsible· for the entire bill from NAPA because he worked at NAPA, he knows about auto parts, he went through the bill, and all the parts on the bill are for her school buses. (*See* Tr. at 14–15.) Perkins presented checks from their joint account that had been written to NAPA and claimed they had already paid for the parts for her bus. She asserted Harding should pay the entire bill. When asked why the bill would still be as high as it was, Perkins said:

> We had purchased a property during our marriage that we had to resell and, uh ... there was ... uh, we had to have, uh ... had a barn built, so there was a contractor that owed a big bill at [NAPA] and ... when, uh ... we told him that we'd pay that bill off if he built us a barn, so he transferred that, the balance from that guys [sic] account ·into, which was ... it was eight ($800.00) or nine hundred ($900.00) dollars.

(Tr. at 34.) As the evidence was conflicting, and as it appears the majority of the balance was due to a debt the parties jointly assumed in exchange for the building of a barn, we cannot say the trial court abused its discretion when it included the debt in the marital pot and divided it between the parties.

Finally, Perkins claims $8,179.38 of the approximately $11,000.00 in the Home Federal Money Market account should have been set aside to her. She believes that money should not have been divided between the parties because $4,179.38 was in the account prior to marriage and $4,000.00 was placed in the account when she sold a vehicle she brought to the marriage. (Tr. at 24.) Just as with the buses and equity in the marital home, the trial court was required to include the entire value of the account in the assets it ·was dividing. *See* Ind.Code § 31–15–7–4(a).

## 2. *Division of Property*

Perkins claims the "Order was incomplete and vague as to the division of the marital property." (Appellant's Br. at 7.)[3] As best we can tell, the vagueness in the order is due to the parties' failure to testify or present exhibits regarding the values of some assets and debts.

Over two decades ago we explained:

Husband also complains that the trial court abused its discretion in distributing certain assets without making a determination as to their value. We find no error in this action by the trial court. It is true that certain Court of Appeals of Indiana cases have held it is an abuse of discretion for a trial court to distribute property without apprising itself of the value of the property. See *Howland v. Howland,* (1975) 166 Ind.App. 572, 337 N.E.2d 555; *Hardiman v. Hardiman,* (1972) 152 Ind.App. 675, 284 N.E.2d 820. However, we now recognize that any party who fails to introduce evidence as to the specific value of the marital property at the dissolution hearing is estopped from appealing the distribution on the ground of trial court abuse of discretion based on that absence of evidence. This rule places the burden of producing evidence as to the value of the marital property where it belongs on the parties, rather than on the trial court. It is appropriate to require the parties to bear the burden of gathering and presenting to the trial court evidence as to the value of the marital property rather than to place upon the trial court the risk of reversal if it distributes the marital property without specific evidence of value. The proper role of a court in dividing property pursuant to a dissolution is to review carefully all the evidence and then to divide the property based on a consideration of the factors listed in IC 31–1–11.5–11(b) (Burns Code Ed., Repl.1980).

The law in this area is further complicated by a line of cases such as *Cross v. Cross,* (1974) 159 Ind.App. 592, 308 N.E.2d 717, and *Jackman v. Jackman,* (1973) 156 Ind.App. 27, 294 N.E.2d 620, in which appellate courts have upheld trial courts in the distribution of unvalued property when the property is not unique and does not require expertise for evaluation or when the unvalued property is clearly of little value in relation to the entire marital estate. These cases put the trial court in the unenviable position of deciding how far it may go in distributing unvalued property under the *Cross, Jackman* line of cases before it runs afoul of the doctrine adopted by *Howland* and *Hardiman.* Our position will end this dilemma for trial courts and will result in greater certainty for the parties involved and in

**3.** Perkins also notes "[i]t appears [Harding] was awarded seventy-one percent (71%) of the marital estate per the order based on the evidence presented to the Court. Such a disparity is an abuse of discretion." (Appellant's Br. at 7.) We are unsure why Perkins believes Harding received seventy-one percent of the estate, because Perkins failed to include any explanation of how she calculated that percentage.

To the extent we were provided with dollar figures, we subtracted Harding's debts from his assets to find he was receiving $8,678.74. Perkins' assets minus her debts total $5,741.21. The total of the valued items in the marital estate, or combination of Perkins' award and Harding's award, has a value of $14,419.95. Harding is receiving 60.19% of the valued estate, while Perkins is receiving 39.81%. The facts simply do not support her assertion.

To the extent we may have misunderstood her argument or the manner in which we should have "worked" the numbers to arrive at a 71–29 split in the assets, the issue is waived for failure to present cogent argument.

greater judicial economy as fewer cases will be sent back to the trial court for further findings.

In sum, we do no more than place the burden of producing evidence as to the value of the marital property squarely where it belongs on the shoulders of the parties and their attorneys. After all, the general rule is that parties to a legal proceeding are bound by the evidence they introduce at trial and they are not allowed a second chance if they fail to introduce crucial evidence. We see no reason to make dissolution proceedings an exception to this rule.

*In re Marriage of Church*, 424 N.E.2d 1078, 1081–82 (Ind.Ct.App.1981).

■ We are confident the court attempted to divide the marital estate equally between the parties, and it did the best it could in light of the dearth of evidence regarding the value of some of the larger assets in the estate. For example, the court included Harding's motorcycle and its debt as items assigned to Harding and included Perkins' buses, home, and bus debt as items assigned to Perkins. Because the parties did not provide evidence of the value of those items, the court was unable to divide the estate precisely in half. However, the court divided most of the valued assets and debts equally between the parties.[4] In light of the state of the record before us, we find no error

attributable to the court. *See, e.g., In re Marriage of Larkin*, 462 N.E.2d 1338, 1344 (Ind.Ct.App.1984) (finding no abuse of discretion in trial court's division of assets when parties had failed to provide evidence of the value of some assets at trial); *Showley v. Showley*, 454 N.E.2d 1230, 1231 (Ind.Ct.App.1983) (rejecting Wife's claims "the trial court was required to *sua sponte* fill the evidentiary void when the parties failed to introduce evidence of value").

Because Perkins has not demonstrated the court abused its discretion in deciding which items to include in the marital estate or in dividing the assets and debts between the parties, we affirm. However, we remand for the court to delete from the assets given to each party the "1/2 Savings Account" valued at "$1,717.21."

Affirmed and remanded with instruction.

SHARPNACK, J., and VAIDIK, J., concur.

---

4. To the extent Perkins argues the court should have given a larger portion of the marital estate to her, on the premise she brought $8,000.00 to the marriage in the Money Market account, we cannot find the court abused its discretion. Harding testified he believed the savings account containing approximately $11,606.00 should be split equally between the parties because they each had savings and checking accounts when they married and they "put them together." (Tr. at 8.) Harding also testified he did not know about a $4,000.00 deposit to the account from the sale of a vehicle, because Perkins used the money from the sale of her truck to purchase a new truck. (*Id.* at 17–18.) While Perkins' testimony supports her version of events, the trial court is to weigh the evidence and assess the credibility of the witnesses. Because we may not engage in those tasks, we cannot say it abused its discretion by dividing the asset equally. Moreover, when we consider the division "as a whole, not item by item," *Krasowski*, 691 N.E.2d at 473, we are confident the court followed the applicable statute the best it could in light of the gaps in the evidence.